59 F.3d 174
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Armando Cruz BUSMENTE, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70999.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided June 21, 1995.
 
 Before: GOODWIN, FARRIS, KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Armando Cruz Busmente appeals from the Board of Immigration Appeals' ("BIA") determination that he is deportable and the BIA's denials of his applications for a suspension of deportation and adjustment of status, and his motion for a continuance. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Busmente, a native and citizen of the Philippines, was admitted to the United States as a non-immigrant treaty investor in December of 1984, with authorization to remain until December 12, 1985. A week before his scheduled departure date, Busmente requested an extension of his stay. The Immigration and Naturalization Services ("INS") denied his request but allowed him until August 9, 1986 to leave the country. Busmente did not depart.
 
 
 4
 On August 20, 1986, the INS instituted deportation proceedings against Busmente. A few weeks later, however, the INS and Busmente agreed to terminate the proceedings to allow Busmente to cooperate with the government's investigation of his former employer. The Immigration Judge ("IJ") instructed Busmente that termination was without prejudice to the INS's ability to institute deportation proceedings on the same or a new charge at a later date. The INS never officially gave Busmente an extension of his stay.
 
 
 5
 In the meantime, Busmente had married an American citizen, who submitted an immediate relative visa petition on his behalf on March 13, 1987. A year later, on February 4, 1988, the INS denied the petition because the marriage was a sham. The Busmentes did not appeal this denial.
 
 
 6
 Five years later, on March 20, 1992, the INS issued Busmente an Order to Show Cause, charging that Busmente had been required to leave on or before August 9, 1986. At a calendar hearing in June, 1992, Busmente said he would contest deportability and apply for suspension of deportation and an adjustment of status. The IJ gave him until August 14, 1992 to file his applications. Despite two subsequent extensions of time in which to submit these applications, Busmente missed the final deadline of November 30, 1992. During this time, however, his wife -- to whom he was still married -- filed a second immediate relative petition on his behalf. On January 15, 1993, the IJ denied Busmentes' applications because Busmente had failed to file them on time and made no showing of good cause to excuse his failure to do so.
 
 
 7
 In mid-February, 1993, Busmente finally submitted his applications, which he supplemented with additional material on April 12, 1993. On April 14, 1993, the IJ heard argument on the question of deportability and on Busmente's eligibility for adjustment of status or suspension of deportation. The IJ found Busmente deportable as charged, rejecting the contention that the INS's voluntary termination of the initial deportation proceedings conferred on him the right to remain in this country indefinitely. The IJ also renewed his denials of the untimely applications for suspension of deportation and adjustment of status, on grounds that Busmente was ineligible for adjustment. Finally, the IJ did not grant Busmente a requested continuance to await the adjudication of his wife's second petition for immediate relative status.
 
 
 8
 Busmente appealed to the BIA on April 16, 1993, which affirmed the IJ on November 16, 1993, adopting the IJ's decision and reasoning as its own.
 
 DISCUSSION
 
 9
 Busmente alleges four errors in the proceedings below. First, he claims he was not deportable because the INS granted him an indefinite extension of stay. Second, he says the BIA abused its discretion in basing its decision on the reasons given by the IJ, without making its own independent analysis. Third, he says the IJ violated his due process rights by refusing to consider the merits of his untimely applications. Lastly, Busmente contends the IJ should have continued the hearings until the INS could adjudicate his wife's second immediate relative petition.
 
 
 10
 I. Whether the INS proved Busmente's deportability?
 
 
 11
 Aliens who remain in this country beyond the date of their authorized sojourn are deportable as overstays unless the INS grants an extension of stay. Samimi v. INS, 714 F.2d 992, 994 (9th Cir. 1983); Ghajar v. INS, 652 F.2d 1347, 1348 (9th Cir. 1981). The sole question in this case is whether the INS granted Busmente such an extension by terminating the original deportation proceedings on September 8, 1986. Busmente argues that the INS thereby extended his authorized stay in the United States beyond his originally scheduled voluntary departure date of August 9, 1986.
 
 
 12
 No evidence in the record suggests that the INS ever granted Busmente an extension of stay; rather, the INS merely told Busmente it would not, for the time being, seek to have him deported. The record shows that the deportation proceedings were terminated without prejudice to the right of the INS to file the same charge or a new immigration charge at a later date. Busmente knew this, and even testified at his second deportation hearing that the INS had told him "we don't promise you anything" by terminating the proceedings. E.R. at 45. Because the INS never granted Busmente an extension of stay, he was and is deportable as charged.
 
 
 13
 2. Whether the BIA was entitled to affirm based on the reasons and conclusions drawn by the IJ?
 
 
 14
 In denying Busmente's appeal, the BIA said:
 
 
 15
 We have reviewed the record of proceedings, the immigration judge's decision, and the respondent's contentions on appeal. As we find that the immigration judge adequately and correctly addressed the issues raised on appeal, his comprehensive and well-reasoned decision is affirmed based upon and for the reasons set forth in that decision. E.R. at 2.
 
 
 16
 Busmente argues that the BIA "has an obligation to review those issues and set forth the reasons it has determined the Immigration Judge's decision to be correct and the position raised by Petitioner on his appeal to the BIA to be incorrect." Busmente is incorrect. The BIA may, if it chooses, adopt the IJ's decision and reasoning as its own, which it need not repeat or rephrase. Alaelua v. INS, 45 F.3d 1379 (9th Cir. 1995).
 
 
 17
 3. Whether the IJ's failure to consider Busmente's late application for suspension of deportation violated his due process rights?
 
 
 18
 Although Busmente was given ample opportunity (including two extensions of time) to file his application for suspension of deportation and adjustment of status, he failed to do so until two months after the final deadline. The IJ accordingly refused to consider the merits of his applications. Now Busmente argues that the IJ's refusal violated his due process rights.
 
 
 19
 Busmente claims, inter alia, that the IJ has no right to refuse to hear the merits of a late application, that the applications are not due until the date of the hearing, that procedure may not be placed over substance where the late filing did not prejudice the court and that, as a Filipino, he is culturally incapable of meeting deadlines. Busmente's claims are meritless.
 
 
 20
 The IJ does not need to waive late filings. Title 8 C.F.R. Sec. 3.31(c) says the IJ "may set and extend time limits for the filing of applications" but that "[i]f an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived." (emphasis added). Busmente's second argument, that the application forms read as though the date of the hearing were the deadline is equally baseless. Busmente asked for and was given two extensions of time in which to file his application, proving that he was well aware that he needed to file his applications before the date of the hearing. It was hardly a denial of due process to put Busmente fully on notice of the deadlines and allow him generous extensions of time to enable him to meet these. Busmente's final argument, that "it has to be recognized that individuals from different cultures and different backgrounds do not necessarily attach the same significance to 'deadlines"' is meritless. If Busmente really is culturally unable to abide by deadlines established by United States law, deportation may be just as well, for clearly the United States are not the place for him.
 
 
 21
 4. Whether the IJ was required to grant a continuance to await adjudication of Busmente's wife's immediate relative petition?
 
 
 22
 At his April hearing, Busmente moved for a continuance pending adjudication of his wife's 1992 petition for an immediate relative visa, which, if approved, would allow him to adjust his status. An IJ may grant a continuance "for good cause shown" and may, indeed, abuse his discretion if he denies a continuance when the petitioner has shown a good claim to be eligible for the relief he seeks. 8 C.F.R. Sec. 3.29; In re Garcia, 16 I & N Dec. 653, 656 (BIA 1978) (should allow continuance to "beneficiary of an unadjudicated visa petition who has made a colorable showing of eligibility for adjustment of status").
 
 
 23
 Because Busmente is ineligible to receive the benefit of the immediate relative petition filed by his wife, the IJ did not abuse its discretion by refusing to grant Busmente a continuance. Title 8 U.S.C. Sec. 1154(c) provides that no petition for immediate relative status shall be approved if "the alien has previously ... sought to be accorded an immediate relative or preference status as the spouse of the citizen of the United States ... by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws ...."
 
 
 24
 Busmente admits that in 1988 the INS denied an immediate relative petition from his wife because the marriage was a sham. He claims, however, that the INS never determined that the marriage was for the purpose of "evading the immigration laws." Denial of a petition for an immigrant visa under 8 U.S.C. Sec. 1154(c) requires only "substantial and probative evidence" in the alien's record of a prior attempt to enter into a marriage for the purpose of evading immigration laws. 8 C.F.R. Sec. 204.2(a) (ii). The decision denying Busmente's wife's first petition clearly meets this standard. It reads, "I find that you have not established that your marriage to Armando Cruz Busmente was contracted for any purposes other than to gain permanent resident status in the United States for the beneficiary," and is based, inter alia, on his wife's diary entries reading "I called pops [Busmente] from there -- and he proposed a fake marriage ... I accepted his proposal today ...."
 
 
 25
 Because the INS is barred by statute from granting Busmente's wife's immediate relative petition, a continuance would only prolong his illegal stay in this country.
 
 
 26
 Affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3